United States District Court
Southern District of Texas
**ENTERED**
April 20, 2018
David J. Bradley, Clerk

| | | |
|---|---|---|
| United States of America, et rel., | § | |
| Deborah Lemon, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| versus | § | Civil Action H-16-1775 |
| | § | |
| Nurses To Go, Inc., et al., | § | |
| | § | |
| Defendants. | § | |

## Opinion on Dismissal

1. *Background.*

Four people who used to work at a hospice claim that it submitted false claims for payment to the government. Deborah Lemon was an administrator and supervising nurse. Laverne Fowler was a nurse and administrator. Eric Castillo and Sarah Diaz were file clerks. They worked for the hospice Nurses To Go, Inc. In November of 2015, Lemon, Fowler, and Diaz resigned. Castillo was fired.

Walter F. Crowder is the president and director of Nurses To Go and the other hospices, A*Med Health, Inc., Tejas Quality Home Health, Inc., A*Med Community Hospice – Austin, Inc., A*Med Community Hospice – San Antonio, Inc., DPM Alliance Hospice Agency, LLC, and Amor Home Health, Inc.

Title 18 of the Social Security Act establishes, among other things, government-subsidized insurance for disabled and elderly Americans.[1] Medicare says that a hospice is supposed to certify that a patient is qualified for its care – expected to live for six or fewer months – when he is admitted, 90 days after he is admitted, and then every 60 days. A physician or nurse practitioner is supposed to meet with the patient in person within 180 days and then every 60

---

[1] *See* 42 U.S.C. §1395, *et seq.*

days. The physician must write a plan of care, review it regularly, and treat the patient accordingly.

Medicare pays for different levels of care at different rates. The levels are general inpatient care, inpatient respite care, routine home care, and continuous home care. The most expensive of these is continuous home care, intended for short-term emergencies when the patient is in his own home.

The relators describe several particular patients and what was wrong in each case. The problems include missing certificates, missing narratives, and not enough face-to-face meetings with a physician.

The relators also say generally that Nurses To Go admitted patients who did not qualify for hospice care. They give no other data about these people.

Lemon had been hired to audit Nurses To Go in May of 2015. She says that she and Diaz discovered that Nurses To Go was backdating certificates and having nurses, not physicians or nurse practitioners, write the supporting narratives for them. The nurses were meeting the patients face-to-face, which physicians were supposed to do. When Lemon audited the patient charts, she saw that the charts either had no plan of care or a generic plan of care that was never updated. The actual care was not the same as the written plan.

On finding the certification problems, Lemon told Crowder, the medical director, and the other administrators. She said that Nurses To Go should tell Medicare that it had not certified patients regularly, like it was supposed to. Crowder said no.

Lemon says that Nurses To Go was using 72 hours of initial continuous care as a marketing gimmick. She explained to her coworkers and bosses that continuous care was meant for emergencies only. As a result, Nurses To Go reduced its continuous care hours from an average of 323 per month to six. A company marketer kept telling prospective patients that they could have initial continuous care, and Lemon kept correcting her.

In October of 2015, an administrator met with several people, none of whom is a relator in this case. Supposedly, the administrator was trying to convince them to bill more continuous care hours. The people at the meeting did not think that was lawful. As a result, several people at Nurses To Go resigned,

including Lemon, Fowler, and Diaz. Lemon says that she heard about Crowder's other companies' billing for unnecessary continuous care hours and saw that they were billing for hundreds of hours per month.

2. *Other Hospices.*

Lemon, Fowler, Castillo, and Diaz worked only for Nurses To Go. They do not know what A*Med Health, Tejas, A*Med – Austin, A*Med – San Antonio, DPM, and Amor were doing. They might have heard rumors but that is the extent of their knowledge. The claims against A*Med Health, Tejas, A*Med – Austin, A*Med – San Antonio, DPM, and Amor will be dismissed.

3. *Nurses To Go.*

The relators claim that Nurses To Go and Crowder violated the False Claims Act by knowingly: (1) making a fraudulent claim for payment,[2] (2) making a false statement material to a false claim,[3] and (3) avoiding an obligation to pay the government.[4] For each theory, what was false must be material.[5]

A. *Patients.*

The assertion that Nurses To Go was admitting patients who did not qualify for hospice care is too vague. We do not know why they did not qualify, how many of these patients were admitted, or in whose opinion they did not qualify.

Lemon says that Nurses To Go admitted patients who were already dead. A hospice is probably obliged to admit them to make sure they are dead. The

---

[2] 31 U.S.C. §3729 (a)(1)(A).

[3] 31 U.S.C. §3729 (a)(1)(B).

[4] 31 U.S.C. §3729 (a)(1)(G).

[5] *Universal Health Services, Inc., v. United States, el rel. Julio Escobar, et al.*, 136 S.Ct. 1989 (2016).

hospice's continuing to treat the corpses might be a problem, but nothing suggests that that happened.

Nurses To Go did not certify its patients regularly and with supporting narratives. Its plans of care were sometimes nonexistent, sometimes generic, and sometimes written by a nurse instead of a physician. Patients did not meet face-to-face with a physician as regularly as they were supposed to.

Lemon has not alleged that these patients did not belong in a hospice or that they were not properly treated. She has alleged that Nurses To Go managed its paperwork poorly and did not adhere to the prescribed schedule. Certificates that patients qualify for hospice care, individualized plans of care, and regular face-to-face meeting with a physician are not material for a claim of fraud; however, Nurses To Go should have done them. Whether the patients actually qualified and whether licensed physicians and nurses cared for them might be material. Laziness – not inadequate care – seems to be the problem here.

B.  *Continuous Care.*

Nurses To Go had been giving new patients continuous care regardless of status. Lemon told the other people who worked there that continuous care was for emergencies only. The number of hours billed dropped dramatically. A marketer was still doing the old thing of selling prospective patients on continuous care. An administrator supposedly wanted the same thing. People quit.

Lemon solved the problem. Once she explained the purpose of continuous care, Nurses To Go reduced its use. One marketer seems not to have followed the new plan. We do not know whether the administrator succeeded in convincing the Nurses To Go personnel to use continuous-care hours as a marketing scheme. All we know is that the people to whom he suggested it were so resistant to his idea that they quit.

C.  *Avoiding Obligations.*

Lemon says that Nurses To Go should have told Medicare that it had not kept up with the certificates, had loosely approached plans of care and sent

nurses to conduct the physician's in-person meeting, and had given patients continuous care who did not need it. Reporting these errors might have been the most prudent course of action, but not reporting them does not necessarily mean that it committed fraud.

Even if Nurses To Go had reported its mistakes, it is unlikely that it would have had to reimburse the government. Its imprecise approach to certificates, written plans of care, and whether a nurse or a physician met with a patient on schedule were not material to payment.

Nurses To Go had been administering continuous care to patients who did not need it, but it did in fact administer continuous care. This is not a case where Nurses To Go was billing routine care as though it were continuous care.

4.  *Conclusion.*

Lemon and the other relators have alleged laziness, bungled paperwork, and mistakes that were corrected. None was material. Nurses To Go might be managed haphazardly, but the relators' claims do not rise to the level of alleging fraud.

This case will be dismissed with prejudice. Deborah Lemon, Laverne Fowler, Eric Castillo, and Sarah Diaz will take nothing from Nurses To Go, Inc., Walter F. Crowder, A*Med Health, Inc., Tejas Quality Home Health, Inc., A*Med Community Hospice – Austin, Inc., A*Med Community Hospice – San Antonio, Inc., DPM Alliance Hospice Agency, LLC, and Amor Home Health, Inc.

Signed on April 20, 2018, at Houston, Texas.

Lynn N. Hughes
United States District Judge