United States District Court
Southern District of Texas
**ENTERED**
March 02, 2021
Nathan Ochsner, Clerk

| UNITED STATES DISTRICT COURT | | SOUTHERN DISTRICT OF TEXAS |
|---|---|---|

| | | |
|---|---|---|
| United States of America, *ex rel.*, Deborah Lemon, *et al.*, | § § § § | |
| Plaintiffs, | § § | |
| *versus* | § § | Civil Action H-16-1775 |
| Nurses To Go, Inc., *et al.*, | § § | |
| Defendants. | § § | |

## Opinion on Dismissal

1. *Background.*

Four people who used to work at a hospice say that it submitted false claims for payment to the government. Deborah Lemon was an administrator and supervising nurse. Laverne Fowler was a nurse and administrator. Eric Castillo and Sarah Diaz were file clerks. They worked for the hospice Nurses To Go, Inc. In November 2015, Lemon, Fowler, and Diaz resigned. Castillo was fired.

Walter Crowder is the president of Nurses To Go; the other hopsices, A*Med Health, Inc., Tejas Quality Home Health Care, Inc., and DPM Alliance Hospice Agency, LLC; and their central billing agency, A*Med Management, Inc.

The hospices would send their billing records to A*Med Management who would review them. A*Med Management would then be responsible for sending the claims to Medicare, which would pay the claims.

Title 18 of the Social Security Act establishes, among other things, government-subsidized insurance for disabled and elderly Americans.[1] Medicare says that a hospice is supposed to certify that a patient is qualified for its care –

---

[1] *See* 42 U.S.C. § 1395, *et seq.*

expected to live for six or fewer months – when he is admitted, 90 days after he is admitted, and then every 60 days. A physician or nurse practitioner is required to meet with the patient in person within 180 days and then every 60 days. The physician must write a plan of care, review it regularly, and treat the patient accordingly.

Medicare pays for differing levels of care at differing rates. The levels are general inpatient care, inpatient respite care, routine home care, and continuous home care. The most expensive of these is continuous home care, intended for short-term emergencies when the patient is in his own home.

The relators describe seven patients and what was wrong in each case. The problems include missing certificates, missing narratives, and not enough face-to-face meetings with a physician.

The relators also say generally that Nurses To Go admitted patients who did not qualify for hospice care and admitted patients who they claim were already dead. They give no other data about these people.

Lemon had been hired to audit Nurses To Go in May 2015. She says that Diaz and her discovered that Nurses To Go was backdating certificates and having nurses, not physicians or nurse practitioners, write the supporting narratives for them. The nurses were meeting the patients face-to-face, which physicians were supposed to do. When Lemon audited the patient charts, she saw that the charts either had no plan of care, a generic plan of care that was never updated, or the actual care was not the same as the written plan.

On finding the certification problems, Lemon told Crowder, the medical director, and the other administrators. She said that Nurses To Go should tell Medicare that it had not certified patients regularly, as was required. Crowder said no.

Lemon says that Nurses To Go was using 72 hours of initial continuous care as a marketing tool. She explained to her coworkers and bosses that continuous care was meant for emergencies only. As a result, Nurses To Go reduced its continuous care hours from an average of 323 per month to six. A

company marketer kept telling prospective patients that they could have initial continuous care, and Lemon kept correcting her.

In October 2015, an administrator met with several people, none of whom is a relator in this case. Supposedly, the administrator was trying to convince them to bill more continuous care hours. The people at the meeting did not think that was lawful. As a result, several people at Nurses To Go resigned, including Lemon, Fowler, and Diaz. Lemon says that she heard about Crowder's other companies' billing for unnecessary continuous care hours and saw that they were billing for hundreds of hours per month.

Lemon, Fowler, Castillo, and Diaz sued under the False Claims Act. Nurses To Go, Crowder, A*Med Management, A*Med Health, Tejas, and DPM have moved to dismiss under federal rule 12(b)(6). The defendants will prevail.

2. *Other Hospices.*

Lemon, Fowler, Castillo, and Diaz worked only for Nurses To Go. They do not know what A*Med Health, Tejas, and DPM were doing. They might have heard rumors but that was the extent of their information. The claims against A*Med Health, Tejas, and DPM will be dismissed.

3. *Nurses To Go, Crowder, and A*Med Management.*

The relators claim that Nurses To Go, Crowder, and A*Med Management violated the False Claims Act by knowingly: (a) making a fraudulent claim for payment,[2] (b) making a false statement material to a false claim,[3] and (c) avoiding an obligation to pay the government.[4]

To survive a motion to dismiss on a FCA claim, the relators must plead facts that show: (a) a false statement or fraudulent course of conduct; (b) that is

---

[2] 31 U.S.C. § 3729(a)(1)(A).

[3] 31 U.S.C. § 3729(a)(1)(B).

[4] 31 U.S.C. § 3729(a)(1)(G).

made or carried out with the required scienter; (c) that is material; and (d) that caused the government to pay back money or to forfeit moneys due.[5] Under the FCA, the relators must comply with federal rule 9(b) by pleading with particularity the circumstances that constitute fraud.[6]

The assertion that Nurses To Go was admitting patients who did not qualify for hospice care is too vague. We do not know why they did not qualify, how many of these patients were admitted, or in whose opinion they did not qualify.

At best, the relators show that Nurses To Go had been giving new patients continuous care regardless of status. Lemon told the other people who worked there that continuous care was for emergency only. The number of hours dropped dramatically. Lemon solved the problem, as she was hired. Once she explained the purpose of continuous care, Nurses To Go reduced the hours of continuous care given. This is not a case where Nurses To Go was billing routine care as though it were continuous care.

The relators allege that Nurses To Go sent the billings to A*Med Management who submitted them to Medicare and that Medicare paid those claims. The relators offer no evidence to support this allegation. Conclusions saying that the claims were submitted and paid are wholly insufficient. Facts of possible errors in billing for a variety of reasons does not show with particularity that fraud occurred. The purpose of having a separate entity that is responsible for collecting bills from the hospices is to have a level of review and correct mistakes before claims are submitted to Medicare.

Hypothetically, if a person were to forge a check as calligraphy practice and then place it in a desk drawer, no fraud has been committed. Once that person walks into a bank and tries to cash or deposit that check, then the fraud

---

[5] *See United States ex rel. King v. Solvay Pharmaceuticals, Inc.*, 871 F.3d 318, 324 (5th Cir. 2017).

[6] *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).

has been completed. Solely alleging the front end of a fraud without any facts to show the back end cannot constitute fraud under the particularity standard. Fraud requires a mental state that the relators do not give any facts in support.

Because the relators have failed to adequately allege facts with particularity to support fraud, their claims against Nurses To Go, Crowder, and A*Med Management will be dismissed.

4. *Conclusion.*

Lemon and the other relators have alleged laziness, bungled paperwork, and mistakes that were corrected. Nurses To Go might be managed haphazardly, but the relators' claims do not rise to the level of particularity required when alleging fraud.

This case will be dismissed with prejudice. Deborah Lemon, Laverne Fowler, Eric Castillo, and Sarah Diaz will take nothing from Nurses To Go, Inc., Walter Crowder, A*Med Health, Inc., Tejas Quality Home Health Care, Inc., DPM Alliance Hospice Agency, LLC, and A*Med Management, Inc.

Signed on March 1st, 2021, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge